UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAI HOUA XIONG,<br><br>Defendant. | CR 22-189 PJS/JFD<br>**INDICTMENT**<br><br>18 U.S.C. § 1028A(a)(1)<br>18 U.S.C. § 1343<br>26 U.S.C. § 7206(1)<br>26 U.S.C. § 7203<br>28 U.S.C. § 2461(c) |

The UNITED STATES GRAND JURY charges that:

## INTRODUCTION

1. From at least in or about February 2015 through in or about February 2022, the defendant, MAI HOUA XIONG, exploited the trust of her employer and multiple victims to use her employment as a financial manager to embezzle more than $1,000,000. To further the execution of her fraud scheme, XIONG used means of identification belonging to another without their knowledge or consent. XIONG also knowingly and willfully failed to accurately report her income, as required, to the United States and the State of Minnesota.

## THE DEFENDANT AND RELATED ENTITIES

At times relevant to this Indictment:

2. From at least in or about May 2013 through in or about October 2021, Defendant MAI HOUA XIONG was a resident of the State and District of Minnesota.


SCANNED
AUG 16 2022
U.S. DISTRICT COURT MPLS

3. Management Company 1 was a business based in Minneapolis, Minnesota, which managed properties for homeowners' associations within the State and District of Minnesota. Management Company 1's duties included the management and maintenance of the residential properties as well as the management of the associations' funds and bookkeeping.

4. Beginning in May 2013, XIONG began working for Management Company 1 as a financial manager. In this position, XIONG provided financial services for Management Company 1's clients, including bookkeeping, paying bills, and ensuring the completion of audits, tax filings, and financial statements. XIONG was a signatory on all clients' bank accounts, could access the accounts online, and had authority to withdraw and deposit money from the accounts. During her employment, XIONG had little oversight and nearly unfettered access to the victim clients' financials, bank accounts, vendor and contractor payments, and ledger/bookkeeping systems.

5. The Unemployment Insurance ("UI") program is administered on behalf of the federal government by the Minnesota Department of Employment and Economic Development ("MNDEED"). The UI program, originally created by the Social Security Act of 1935, is a jointly funded federal and state system designed to provide benefits to unemployed persons who are out of work due to no fault of their own. The purpose of the UI program is to provide financial support directly to the claimants to ensure that basic life necessities can be met on a weekly basis while the claimant seeks employment.

## THE SCHEME TO DEFRAUD

6. From at least in or about February 2015 through at least in or about February 2022, in the State and District of Minnesota and elsewhere, the defendant,

**MAI HOUA XIONG,**

knowingly and intentionally devised and executed a scheme and artifice to defraud and to obtain money from multiple victim homeowner's associations, including Paul Revere Cooperative, Lakewood Village, Victim HOA I, Victim HOA II, Old Town in Town, Sunrise Villa, Minnesota Students Cooperative, Victim HOA III, The Nokoma, and Alpine Court (collectively, "the Associations"), and from multiple governmental agencies, including the United States Social Security Administration and the Minnesota Department of Employment and Economic Development by means of materially false and fraudulent pretenses, representations, and promises, and concealment of material facts.

7. It was part of the scheme to defraud that from at least in or about February 2015 through at least in or about August 2021, XIONG used her position as Management Company 1's financial manager to embezzle funds directly from Management Company 1's clients' bank accounts. These clients—the Associations—were all homeowners' associations based in and around the Twin Cities Metro area.

8. Each of the Associations had at least one, and often multiple, bank accounts. It was the duty of each individual Association to collect Homeowners' Association Fees ("HOA fees") from their respective residents. The Associations deposited the HOA fees into their bank accounts. The money was then be used to pay for maintenance, construction, and other costs incurred by the Associations. As part of her job duties,

XIONG had access to the bank statements showing the intake and payments made from the Associations' bank accounts, and she had signatory authority over the accounts. XIONG was also responsible for ensuring that the accounts balanced and for keeping the members of the Associations up to date on the flow of money to and from the accounts.

9.  From February 2015 through at least in or about June 2021, XIONG repeatedly accessed the Associations' bank accounts and conducted electronic transfers of funds from these accounts directly to personal bank accounts in her own name. XIONG disguised these transfers by mis-labeling them to make it appear as if they were legitimate Association expenses. In addition to electronic transfers, XIONG also used her authority as a signatory to make cash withdrawals directly from the Associations' accounts, including withdrawals after her termination from Management Company 1 in July 2021.

10. Occasionally, the Association needed to plan for larger scale construction and maintenance projects. To ensure that the Association had sufficient funds for the project, the Association began earmarking money for the project years in advance. Typically, in such situations, the Association charged residents an additional assessment fee, on top of the HOA fee, and put the assessment aside by placing it into a special bank account or by purchasing a certificate of deposit ("CD") from a bank.

11. Specifically, one of the Associations, Victim HOA II, was planning to replace the roofs of its condominium buildings. The estimated cost of the project was approximately $1.3 million. In approximately 2018, Victim HOA II began charging tenants a special assessment to raise funds for the new roof. Victim HOA II believed it had sufficient funds to complete the project in 2021. To obtain interest on the funds

between 2018-2021, Victim HOA II's association, with XIONG's assistance, placed the assessment fees into CDs at various banks. XIONG was a signatory on Victim HOA II's CDs.

12. A substantial portion of the money that XIONG stole from the Associations was taken directly from accounts belonging to Victim HOA II, including accounts containing Victim HOA II's special assessment funds. By January 2021, XIONG had stolen enough money from the Victim HOA II accounts that Victim HOA II could not afford the roof replacement project.

13. A second, wholly separate Association, Victim HOA I, was planning a similar roofing project for its condominium building. Victim HOA I planned to install a new roof in 2022. To do so, Victim HOA I also began collecting a special assessment from its residents and, like Victim HOA II, placed the money from the assessment into multiple CDs at various banks. XIONG assisted Victim HOA I in purchasing the CDs and was a signatory on Victim HOA I's CDs.

14. In January 2021, XIONG improperly used her authority as signatory on Victim HOA I's CDs to cash out the CDs without the knowledge or approval of Victim HOA I's homeowner's association. XIONG received cashier's checks for the total amount of the CDs. The cashier's checks provided by the banks were made payable to "Victim HOA I." To conceal her earlier theft from the Victim HOA II bank accounts, XIONG altered the payee to "Victim HOA II," and deposited the cashier's checks into Victim HOA II's bank account.

15. While XIONG was a signatory on accounts for all the Associations, none of the Associations gave XIONG permission or authority to transfer money to her own bank accounts or to convert funds belonging to the Associations to her personal use. Likewise, none of the Associations gave XIONG permission or authority to move or comingle money of separate Associations.

16. It was further part of the scheme to defraud that XIONG provided the Associations with false documentation to conceal her fraud against the Associations, forestall further inquiry by Association personnel, and avoid the detection of her fraud scheme. For example, in approximately 2019, Victim HOA I elected new members to its board of directors. Following the election, the new board requested that XIONG provide historical financial documents, including Victim HOA I's most recent audit and tax return paperwork. Instead of providing accurate documentation, which would have revealed the missing funds from Victim HOA I's bank account, XIONG provided documents containing false information.

17. It was further part of the scheme to defraud that while XIONG was misappropriating funds from the Associations for her own personal uses, XIONG was simultaneously underrepresenting her income to the United States and the State of Minnesota to wrongfully obtain public assistance. From in or about July 2021, when Management Company 1 discovered XIONG's fraud and terminated her employment, XIONG also began collecting Unemployment Insurance (UI) funds. However, beginning on or about October 11, 2021, until on or about January 31, 2022, XIONG was employed and was not lawfully entitled to receive UI benefits through MNDEED. During this time,

United States v. Xiong

XIONG continued to receive UI funds to which she was not entitled by repeatedly misrepresenting her employment status to MNDEED.

## COUNTS 1-5
(Wire Fraud)

18. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the defendant,

**MAI HOUA XIONG,**

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly and unlawfully transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds, as described below:

| Count | Date of Wire (on or about) | Wire |
|---|---|---|
| 1 | August 18, 2017 | Unauthorized $8,000 transfer from victim Old Town in Town's bank account at BMO Harris Bank to XIONG's bank account at Wells Fargo Bank. |
| 2 | September 29, 2017 | Unauthorized $15,135.56 transfer from Victim HOA I's bank account at BMO Harris Bank to XIONG's bank account at Wells Fargo Bank. |
| 3 | December 18, 2020 | Unauthorized $15,000 transfer from victim Alpine Court's bank account at BMO Harris Bank to XIONG's bank account at Wells Fargo Bank. |
| 4 | January 15, 2021 | Unauthorized $14,975 transfer from Victim HOA II's bank account at BMO Harris Bank to XIONG's bank account at Wells Fargo Bank. |
| 5 | February 6, 2022 | Unauthorized $491 transfer of funds from MNDEED to XIONG's bank account at Wells Fargo Bank. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT 6
(Aggravated Identity Theft)

20. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

21. On or about November 13, 2019, in the State and District of Minnesota and elsewhere, the defendant,

**MAI HOUA XIONG,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the name of Individual T.C., during and in relation to the commission of a felony violation enumerated in Title 18, United States Code, Section 1028A(c), specifically, wire fraud, in violation of Title 18, United States Code, Section 1343, as alleged in Counts 1-4.

All in violation of Title 18, United States Code, Section 1028A.

## COUNT 7
(Making and Subscribing a False Return – 2016)

22. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

23. On or about May 4, 2017, in the State and District of Minnesota, the defendant,

**MAI HOUA XIONG,**

a resident of Minnesota, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040A, for calendar year 2016, which was verified by a written declaration that it was made under penalty of perjury and was filed with the Internal Revenue Service, and which she did not believe to be true and correct as to every material matter, in that on Line 27 she reported her taxable income as $10,287, whereas, as the defendant then and there well knew, and believed, her taxable income for the 2016 calendar year was least $74,096.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 8
(Making and Subscribing a False Return – 2017)

24. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

25. On or about January 22, 2018, in the State and District of Minnesota, the defendant,

**MAI HOUA XIONG,**

a resident of Minnesota, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040A, for calendar year 2017, which was verified by a written declaration that it was made under penalty of perjury and was filed with the Internal Revenue Service, and which she did not believe to be true and correct as to every material matter, in that on Line 27 she reported her taxable income as $6,576, whereas, as the defendant then and there well knew and believed, her taxable income for the 2017 calendar year was at least approximately $199,952.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 9
(Making and Subscribing a False Return – 2018)

26. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

27. On or about March 14, 2019, in the State and District of Minnesota, the defendant,

**MAI HOUA XIONG,**

a resident of Minnesota, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040, for calendar year 2018, which was verified by a written declaration that it was made under penalty of perjury and was filed with the Internal Revenue Service, and which she did not believe to be true and correct as to every material matter, in that on Line 10 she reported her taxable income as $35,969, whereas, as the defendant then and there well knew and believed, her taxable income for the 2018 calendar year was at least approximately $168,449.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 10
(Failure to File a Individual Return – 2019)

28. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

29. At all times relevant to this Indictment, XIONG was an individual not expressly exempt from tax with her principal residence in the State of Minnesota. During the calendar year 2019, XIONG had and received reportable income of at least

approximately $196,601. By reason of such income, she was required by law, following the close of calendar year 2019 and on or before July 15, 2020, to make a United States Individual Income Tax Return to the Internal Revenue Service, or to other proper officers of the United States, stating specifically the items of XIONG's gross income and any deductions and credits to which she was entitled by law.

30.  On or about July 15, 2020, in the State and District of Minnesota, the defendant,

**MAI HOUA XIONG,**

well knowing and believing the facts set forth in the preceding paragraph, did willfully fail to make and file an income tax return with the Internal Revenue Service, or with any other proper office of the United States, for calendar year 2019.

All in violation of Title 26, United States Code, Section 7203.

### COUNT 11
(Making and Subscribing a False Return – 2020)

31.  Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

32.  On or about February 15, 2021, in the State and District of Minnesota, the defendant,

**MAI HOUA XIONG,**

a resident of Minnesota, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040, for calendar year 2020, which was verified by a written declaration that it was made under penalty of perjury and was filed with the Internal

Revenue Service, and which she did not believe to be true and correct as to every material matter, in that on Line 15 she reported her taxable income as $40,835, whereas, as the defendant then and there well knew and believed, her taxable income for the 2020 calendar year was at least approximately $288,621.

All in violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATIONS

33. Upon conviction of the offenses alleged in Counts 1 through 5 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1343.

34. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____        _____
UNITED STATES ATTORNEY                FOREPERSON